UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | |
| GLORIA PATRICIA TAYLOR, | Criminal Action No. TDC-15-0265 |
| Defendant. | |

**MEMORANDUM ORDER**

Pending before the Court is Defendant Gloria Patricia Taylor's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  ECF No. 174.  In 2016, Taylor was convicted after a seven-day jury trial of Conspiracy to Distribute and Possess with Intent to Distribute 1,000 kg or More of Marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); two counts of Use of a Communications Device to Facilitate Narcotics Trafficking, in violation of 21 U.S.C. § 843(b); and one count of Possession with Intent to Distribute 100 kg or More of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  On November 17, 2016, the Court sentenced Taylor to a total sentence of 144 months of imprisonment, followed by five years of supervised release. Taylor is presently designated to the Federal Correctional Institution Aliceville ("FCI-Aliceville") in Aliceville, Alabama.  Taylor has served approximately 57 months of imprisonment and, with good conduct credits, is scheduled to be released on July 15, 2026.  In her Motion, Taylor seeks a reduction of her sentence under a statutory provision commonly referred to as the "compassionate release" provision because of the COVID-19 pandemic and medical and other conditions that arguably place her at high risk for severe illness from COVID-19.  The Government opposes the Motion.

**DISCUSSION**

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c) (2018).  This general rule is subject to certain exceptions, including the compassionate release provision, which allows the Bureau of Prisons ("BOP") to seek a modification of a prisoner's sentence.  *See id.* § 3582(c)(1)(A).  Under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), the compassionate release provision was modified to also allow prisoners to seek a sentencing reduction directly from the Court.  The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that:
>
> (1)      in any case that—
>
>> (A)      the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>
>>> (i)      extraordinary and compelling reasons warrant such a reduction;
>>
>> *      *      *
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).  There is no dispute that Taylor has satisfied the requirement to exhaust administrative remedies.

I.      **Extraordinary and Compelling Reasons**

As of January 25, 2021, the pandemic has resulted in 97,831,595 cases worldwide and 2,120,877 deaths.   *Coronavirus Disease (COVID-19) Pandemic*, World Health Org., https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last visited Jan. 25, 2021).   In the United States, it has resulted in 24,876,261 cases and 416,010 deaths.   *CDC COVID Data Tracker*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Jan. 25, 2021).   In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high. *See Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) (citing expert opinions).   Thus, even with the BOP's mitigation measures, COVID-19 at BOP facilities has resulted in a total of 50,884 cases among inmates and staff and 207 deaths.   *See COVID-19: Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Jan. 25, 2021).

Although the presence of the historic COVID-19 pandemic in prisons arguably could alone establish extraordinary and compelling reasons, FCI-Aliceville currently has a total of 18 active cases of COVID-19 among inmates and staff, and during the course of the pandemic has had an additional 67 cases among inmates and staff who have now recovered.   *Id.*   Thus, COVID-19 is currently inside the facility and presents a risk to the health and safety of Taylor and the other inmates.

Moreover, Taylor has asserted that she has conditions that, under the present circumstances of the COVID-19 pandemic, provide extraordinary and compelling reasons for a sentence reduction.   Taylor is 57 years old and is obese, based on her body mass index ("BMI") of approximately 32.4, as calculated from the height and weight stated in her medical records.   She

also has had hypertension for many years, and she has sickle cell trait. According to the United States Centers for Disease Control and Prevention ("CDC"), obesity, as defined by a BMI over 30, is one the health conditions that places an individual at "increased risk of severe illness" from COVID-19, the highest level of risk identified by the CDC. *See People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 19, 2021). Although sickle cell trait is not listed as a high-risk condition, sickle cell disease is also condition that places an individual at "increased risk of severe illness" from COVID-19. *Id.* Hypertension is a condition in the second level of risk as defined by the CDC, consisting of conditions that "might" place an individual "at an increased risk for severe illness" from COVID-19. *Id.* Dr. W. Anthony Gerard, engaged by defense counsel, has provided an expert opinion that sickle cell trait may also place an individual at high risk for COVID-19, and that the combination of Taylor's age, race, obesity, hypertension, and sickle cell trait place her at "high risk" if she remains incarcerated during the COVID-19 pandemic. Gerard Letter at 2-4, Supp. Mot. Ex. 2, ECF No. 184-2.

The Government does not seriously contest the question whether Taylor faces a high risk from COVID-19 and invites the Court to "assume, without deciding, that the defendant has medical conditions that may constitute extraordinary and compelling reasons." Opp'n Mot. Compassionate Release at 16, ECF No. 190. Based on the medical records and the CDC guidance, the Court agrees with Dr. Gerard that, at a minimum, the combination of Taylor's conditions place her at high risk. When Taylor's medical conditions are combined with the fact that Taylor is incarcerated in a federal prison impacted by COVID-19 at the present time, the Court finds that there are "extraordinary and compelling reasons" that could justify a reduced sentence. *See* 18 U.S.C. § 3582(c)(1)(A).

## II.    Remaining Factors

Even with extraordinary and compelling reasons, compassionate release would also require consideration of the factors in 18 U.S.C. § 3553(a) and an assessment of whether a sentence reduction is consistent with "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  Although the relevant policy statement in the sentencing guidelines permits a reduction based only on meeting the broad category of "extraordinary and compelling reasons," U.S.S.G. § 1B1.13(1)(A) & app. note 1(D), it specifically requires consideration of whether the prisoner presents a danger to others or to the community, U.S.S.G. § 1B1.13(2).

Taylor, in essence, seeks a sentence reduction from the original 144-month sentence to a sentence of 57 months, which would result in her service of 40 percent of the original sentence, or 47 percent of the sentence adjusted for good conduct credits.  As to the § 3553(a) factors, the nature and circumstances of the offense consisted of a multi-year conspiracy to transport large quantities of marijuana from Arizona, near the Mexican border, to Maryland for distribution.  The large quantity of drugs, which were shipped on pallets by freight carrier, rendered the crime more serious than many marijuana trafficking crimes.  These considerations were important factors in the issuance of the original sentence.

Nevertheless, a significant reduction below the original sentence is not inconsistent with the § 3553(a) factors.  First, unlike many drug trafficking crimes, there was no evidence of any violence or use of firearms to support the drug trafficking activity.  Although there were co-conspirators, Taylor handled many parts of the operation herself, including on many occasions renting a van, picking up the pallets herself, and driving them to her house, thus reflecting that this was not a complex, intricate conspiracy comparable to the most serious drug trafficking conspiracies in this District.  Second, at the time of the offense, Taylor had no significant history

of criminal activity:  she had zero criminal history points, with only one prior conviction, for possession with intent to distribute marijuana, from 1994, close to 20 years before instant offense.

Third, the conspiracy was limited to the distribution of marijuana only, a drug that has now been legalized or decriminalized in many states.  The possession of small quantities of marijuana has been decriminalized in Maryland.  Md. Code Ann., Crim. Law § 5-601(c)(2)(ii) (West 2020). Although the shifting legal and societal landscape relating to marijuana had already begun to move at the time of the conviction and sentence, it has only accelerated in the years since, with a majority of states now having approved some form of legalization or decriminalization of marijuana possession.  *See Marijuana Overview*, Nat'l Conference of State Legislatures, https://www.ncsl.org/research/civil-and-criminal-justice/marijuana-overview.aspx (last visited Jan. 25, 2021).  These observations do not excuse the crime, which remains a violation of federal law.  Indeed, marijuana distribution, particularly in the quantities trafficked by Taylor, remains unlawful under Maryland law.  *See* Md. Code Ann., Crim. Law §§ 5-402, 5-602.  But under present circumstances, particularly in light of the non-violent nature of the offense and Taylor's lack of any qualifying criminal history, a substantial reduction in the sentence would still be consistent with the purposes of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment.

Finally, over most of the past year, Taylor and all inmates, particularly those in prisons such as FCI-Aliceville which have had a significant number of COVID-19 cases, have faced substantially more severe conditions during the COVID-19 pandemic than were contemplated at the time of sentencing.  The severity has increased both because of the specter of contracting COVID-19 and the more significant restrictions that the BOP has had to institute in its efforts to control the pandemic, including curtailing prison programs, greater restrictions on movement, and

suspension of visitation for a lengthy period of time.  The actual severity of Taylor's sentence, because of the COVID-19 outbreak and Taylor's high-risk conditions, thus exceeds what the Court anticipated at the time of sentencing.  Under these circumstances, a reduced sentence would still reflect the seriousness of the offense, promote respect for the law, and provide just punishment and, more broadly, would be consistent with the § 3553(a) factors.

Although a reduced sentence is warranted, where this crime was very serious, the Court concludes that a sentence reduced all the way to time served of approximately 57 months would not be consistent with the § 3553(a) factors.  However, with the inclusion of a 24-month period of home detention as a condition of supervised release, it would be.  Such a sentence would bring Taylor's total period of detention to 81 months, representing 56 percent of the original sentence and 66 percent of the actual sentence after consideration of good conduct credits.

As for the question of whether Taylor presents a danger to the community, Taylor has an extremely limited criminal history, she has no history of violence, and the offenses of conviction did not involve any violence or threat of violence.  Though Taylor has had some disciplinary infractions in prison, such as a violation of the mask policy during the COVID-19 pandemic, none reveal any potential for violence.  The Government therefore relies only on the argument that if Taylor returns to the distribution of marijuana, she will then present a renewed danger because such distribution inherently endangers the community.  The Court, however, does not find that Taylor presents a danger to the community for two reasons.  First, in light of the societal and legal shift relating to marijuana that has resulted in legalization and decriminalization of the drug in many jurisdictions, the danger posed by distribution cannot be viewed as comparable to the danger posed by distribution of other controlled substances.  Second, to the extent that there is some potential risk to the community, the Court finds that where Taylor will either be serving the five-

year term of supervised release, or will be subjected to removal from the United States under immigration law, she does not present the type of danger contemplated by the policy statement. *See* U.S.S.G. § 1B1.13(2). Finally, because, as discussed above, the Court will add a condition of home detention to her supervised release, any arguable danger will be alleviated.

Accordingly, the Court will grant the Motion and reduce Taylor's sentence to time served plus 14 days, with an additional condition of supervised release of 24 months of home detention, which will be served during any period when she is not in the custody of U.S. Immigration and Customs Enforcement ("ICE") for removal proceedings, such as in the event she is not actually transferred to ICE custody upon release from FCI-Aliceville, she is released from ICE custody pending resolution of the immigration proceedings, she is granted some form of relief from removal, or she is removed and then returns to the United States. The 14-day period is included so that Taylor can remain in quarantine at FCI-Aliceville before she is released. The Court finds that such a reduction is warranted under 18 U.S.C. § 3582(c)(1)(A) and is in the interests of justice.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Taylor's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 174, is GRANTED. A separate Amended Judgment shall issue.

Date:   January 25, 2021

THEODORE D. CHUANG
United States District Judge